UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JERRY VANDIVER,

              Plaintiff,                           Hon. Janet T. Neff

v.                                                Case No. 1:10 CV 41

CORRECTIONAL MEDICAL
SERVICES, et al.,

              Defendants.
_____/

## <u>REPORT AND RECOMMENDATION</u>

       This matter is before the Court on <u>Defendants Michigan Department of Corrections and State of Michigan's Motion for Summary Judgment</u>, (dkt. #107), and <u>Defendant Correctional Medical Services, Inc.'s Motion to Dismiss</u>, (dkt. #115).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that <u>Defendants Michigan Department of Corrections and State of Michigan's Motion for Summary Judgment</u>, (dkt. #107), be **granted**; <u>Defendant Correctional Medical Services, Inc.'s Motion to Dismiss</u>, (dkt. #115), be **granted**; and this matter terminated.


## <u>BACKGROUND</u>

       Plaintiff initiated this action on January 4, 2010, against Dr. Craig Hutchinson, Correctional Medical Services, Inc. (CMS), the Michigan Department of Corrections (MDOC), and the State of Michigan.  (Dkt. #1).  Plaintiff subsequently amended his complaint, dropping his claims against Dr. Hutchinson.  (Dkt. #78).  The following allegations are contained in Plaintiff's First Amended Complaint.

Plaintiff is "a wheelchair bound individual suffering from permanent disabilities, e.g., Hepatitis C; partial amputation of both left and right feet resulting in permanent wheelchair status; insulin dependent diabet[es]; and heat related illness."

According to Plaintiff, "since approximately 2003. . .Defendant Correctional Medical Services, Inc., (CMS). . .adopted, authorized, and implemented a nationwide unwritten corporate policy of acting with deliberate indifference to health care conditions. . .[of] chronic care prisoners. . .and disregarded that serious risk for purely monetary incentives." Plaintiff further asserts that "since August 2006, Defendant, CMS, exercised the full and complete authority of and acted on behalf of and pursuant to its nationwide policy of deliberate indifference to the serious medical needs of chronic care prisoners based upon craven profit motives." Plaintiff alleges that CMS violated his Eighth Amendment right to be free from cruel and unusual punishment.

With respect to the State of Michigan and the MDOC, Plaintiff alleges that Defendants violated his rights under the Americans with Disabilities Act (ADA) by excluding him from participation in or denying him the benefit of the following: (1) a medically prescribed special diabetic diet; (2) a barrier free wheelchair accessible facility; (3) a barrier free wheelchair accessible bedroom/cell; (4) physical therapy and handicap weight exercise room; (5) educational and/or vocational prison programs; (6) a podiatrist specialist visit; and (7) an orthopedic specialist visit.

Plaintiff seeks declaratory, injunctive, and monetary relief. Defendants MDOC, State of Michigan, and CMS now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.        Exhaustion

As previously noted, Plaintiff asserts that Defendants MDOC and State of Michigan violated his rights under the ADA by excluding him from participation in or denying him the benefit of several services, programs, and activities.  Plaintiff alleges that Defendant CMS, in pursuit of "craven profit motive," employed a "custom of deliberate indifference to serious medical care" in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Defendants MDOC and State of Michigan assert that Plaintiff has failed to exhaust all of these claims, except his claim regarding the alleged denial of a medically prescribed special diabetic diet.  Defendant CMS asserts that Plaintiff has failed to exhaust his claim against it.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See also, Porter v. Nussle*, 534 U.S. 516, 520 (2002) (holding that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  This requirement clearly applies to Plaintiff's § 1983 claims, but also applies to Plaintiff's ADA claims.  *See, e.g., O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1061-62 (9th Cir. 2007); *Cobb v. Weyandt*, 2009 WL 5126562 at *1-2 (3rd Cir., Dec. 30, 2009).

Prisoners, however, are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" on which the defendant bears the burden. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state

court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

The evidence submitted by the parties reveals that Plaintiff has pursued the following grievances.

A.      Grievance JCF 2007-01-0070-12e

Plaintiff initiated this grievance on January 9, 2007, alleging that he had "submitted about Nine health care kites since January 3, 2007 and I have not received any responses to any of these kites." (Dkt. #119, Exhibit E). While Plaintiff pursued this grievance through all three steps of the grievance

process, this grievance does not concern Plaintiff's claims against the moving defendants.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants.

B.      Grievance ARF-2007-03-0511-12z

Plaintiff initiated this grievance on March 20, 2007, alleging that "ARF - health care professionals" improperly approved his transfer to a different correctional facility.  (Dkt. #115, Exhibit B2).  While Plaintiff pursued this grievance through all three steps of the grievance process, this grievance does not concern Plaintiff's claims against the moving defendants.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants.

C.      Grievance ARF-2007-06-1152-28i

Plaintiff initiated this grievance on June 27, 2007, alleging that several individuals subjected him to unlawful retaliation.  (Dkt. #115, Exhibit B3).  While Plaintiff pursued this grievance through all three steps of the grievance process, this grievance does not concern Plaintiff's claims against the moving defendants.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants.

D.      Grievance ARF-07-08-1436-17a

Plaintiff initiated this grievance on August 12, 2007, alleging that several prison guards threatened him.  (Dkt. #116, Exhibit B4).  While Plaintiff pursued this grievance through all three steps of the grievance process, this grievance does not concern Plaintiff's claims against the moving defendants.  Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants.

E.      Grievance LRF-08-01-00009-12b

Plaintiff initiated this grievance on January 2, 2008, alleging that the Department of Community Mental Health had engaged in "a coverup" concerning his participation in certain prison programming. Plaintiff further alleged that he was improperly transferred. (Dkt. #116, Exhibit B5). While Plaintiff pursued this grievance through all three steps of the grievance process, this grievance does not concern Plaintiff's claims against the moving defendants. Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants.

F.      Grievance HVM-08-09-1121-19e

Plaintiff initiated this grievance on September 22, 2008, alleging that he was not given a property receipt for certain property taken during a recent hospitalization. (Dkt. #116, Exhibit B6). While Plaintiff pursued this grievance through all three steps of the grievance process, this grievance does not concern Plaintiff's claims against the moving defendants. Thus, this grievance fails to properly exhaust any of Plaintiff's claims against Defendants.

G.      Grievance JCF 2006-08-1461-12d3

Plaintiff initiated this grievance on August 26, 2006, alleging that Correctional Medical Services, the Michigan Department of Corrections, and the State of Michigan implemented an "unconstitutional policy" that resulted in the denial of Plaintiff's "diabetic diet tray and snack." (Dkt. #78; Dkt. #116, Exhibit B7). Plaintiff pursued this grievance through all three steps of the grievance process.

Defendants MDOC and State of Michigan concede that this grievance serves to exhaust Plaintiff's claim that he was denied a medically prescribed special diabetic diet. Defendant CMS, however, argues that this grievance fails to exhaust Plaintiff's claim that CMS employed a "custom of deliberate indifference" based on "craven profit motives." While the language contained in this grievance may not precisely mirror that employed in Plaintiff's First Amended Complaint, the Court finds this grievance is sufficient to constitute proper exhaustion of Plaintiff's claim against CMS. For example, in the grievance Plaintiff alleges that CMS, in an effort to cut costs, acted to implement an "unconstitutional" policy which lead him to suffer many adverse effects, including the deprivation of a special diabetic diet. The underlying purpose of the exhaustion requirement is to provide notice to prison officials and others of alleged misconduct so that they have the first opportunity to address such. The Court finds that this particular grievance was sufficient to put CMS on notice that Plaintiff was alleging that it employed a "custom of deliberate indifference" based on "craven profit motives."

Accordingly, the Court finds that Plaintiff has properly exhausted his claim that Defendants MDOC and the State of Michigan violated his rights under the ADA by denying him a special diet. The Court further finds that Plaintiff has properly exhausted his claim that CMS violated his Eighth Amendment rights by employing a "custom of deliberate indifference" based on "craven profit motives."

This does not, however, terminate the analysis. Failure to exhaust administrative remedies is an affirmative defense on which Defendants bear the burden. As previously noted, to prevail on this affirmative defense, Defendants "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Defendants are not entitled to relief if "the evidence is

susceptible of different interpretations or inferences by the trier of fact." *Hunt*, 526 U.S. at 553. Defendants' efforts do not satisfy this standard.

The evidence thus far submitted (and discussed above) reveals that Plaintiff pursued seven separate grievances only one of which served to exhaust any of the claims asserted in Plaintiff's First Amended Complaint.  By itself, however, such evidence is insufficient to warrant the relief Defendants seek as such fails to establish that these seven grievances represent the entire universe of grievances Plaintiff filed.  Absent evidence that these seven grievances represent the entire universe of grievances, the Court cannot conclude that Defendants have satisfied their burden.  While Defendants have submitted evidence in an attempt to establish that the seven aforementioned grievances do, in fact, represent the entire universe of grievances, as discussed below such evidence is insufficient.

Defendants MDOC and State of Michigan have submitted absolutely no evidence on this particular question.  Defendant CMS has submitted an exhibit which it claims establishes that "between January 4, 2007 and January 4, 2010, Plaintiff filed six (6) grievances through Step III of the grievance procedure."  (Dkt. #115 at 4 n.1).  Presumably these six particular grievances are those identified in subsections A-F above.  CMS also concedes that Plaintiff filed Grievance JCF 2006-08-1461-12d3 (discussed in subsection G above) on August 26, 2006.

The Court discerns two faults with CMS' argument.  First, the Court finds that the exhibit submitted by CMS fails to establish what CMS purports.  This particular exhibit is five pages in length and appears to establish that between 1999 and June 2009 Plaintiff initiated more than 50 grievances. As for the claim that between January 4, 2007, and January 4, 2010, Plaintiff filed only six grievances, this exhibit indicates that Plaintiff, in fact, filed eight grievances during that time period.  While Plaintiff may not have pursued all eight of those grievances through all three steps of the grievance process, such

is not established by this exhibit.  In sum, the Court discerns nothing in this exhibit that establishes that the only grievances Plaintiff pursued through Step III of the grievance process are the seven discussed above.  Furthermore, even if the Court assumes that, between January 4, 2007, and January 4, 2010, the only grievances that Plaintiff pursued through all three steps of the grievance process are the six grievances discussed above, the result is the same as such does not foreclose the possibility that Plaintiff properly pursued a grievance at a date prior to January 4, 2007, that could serve to exhaust claims asserted in his First Amended Complaint.  To understand the error in Defendant's argument, a discussion of the statute of limitations applicable in this matter is necessary.

Plaintiff's ADA claims are brought under Title II of the ADA, which provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132).  Title II of the ADA, however, does not articulate a statute of limitations.  *See, e.g., Disabled in Action of Penn. v. Southeastern Penn. Trans. Auth.*, 539 F.3d 199, 208 (3rd Cir. 2008).  Likewise, § 1983, pursuant to which Plaintiff's claims against CMS are asserted, contains no statute of limitations.  *See, e.g., Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009).

In such a circumstance, the Court must borrow the statute of limitations of the most analogous state law cause of action.  *See Disabled in Action*, 539 F.3d at 208 (because Title II of the ADA does not include an express statute of limitations, the Court must "borrow the statute of limitations of the most analogous state law cause of action"); *Bonner*, 564 F.3d at 430 (because "Congress has failed to legislate a statute of limitations for § 1983 claims," the Court must "borrow and apply to all § 1983 claims the one most analogous state statute of limitations").  The Supreme Court has held that

"[b]ecause § 1983 claims are best characterized as personal injury actions. . .a State's personal injury statute of limitations should be applied to all § 1983 claims." *Owens v. Okure*, 488 U.S. 235, 240-41 (1989). With respect to ADA claims, courts likewise conclude that the Court must look to a state's personal injury statute of limitations. *See, e.g., Disabled in Action*, 539 F.3d at 208; *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011); *Z.F. v. Ripon Unified School District*, 2011 WL 320240 at *3 (E.D. Cal., Jan. 28, 2011).

Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions." *Okure*, 488 U.S. at 249-50; *Bonner*, 564 F.3d at 430. Michigan law articulates multiple statutes of limitation applicable to personal injury actions. *See* Mich. Comp. Laws § 600.5805. Accordingly, the limitations period applicable in the present action is three years, as articulated in Mich. Comp. Laws § 600.5805(10). *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990); *Jones v. City of Allen Park*, 167 Fed. Appx. 398, 407 (6th Cir., Jan. 3, 2006).[1]

While the Court looks to state law to identify the applicable statute of limitations, federal law must be applied when determining when the relevant limitations period begins to run. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Hebron v. Shelby County Government*, 406 Fed. Appx. 28, 30 (6th Cir., Dec. 22, 2010). Under federal law, the statute of limitations begins to run "when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *Ohio Midland, Inc. v. Ohio Dept. of Transp.*, 286 Fed. Appx. 905, 911 (6th Cir., July 1, 2008). A plaintiff has reason to know of his injury when he "should have

---

[1] The *Hardin* and *City of Hamtramck* courts identified the relevant provision as Mich. Comp. Laws § 600.5805(8). This particular provision is presently codified at Mich. Comp. Laws § 600.5805(10).

discovered it through the exercise of reasonable diligence." *Dotson v. Lane*, 360 Fed. Appx. 617, 619 n.2 (6th Cir., Jan. 5, 2010) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

While the Court agrees with Defendants that the statute of limitations applicable to Plaintiff's ADA and § 1983 claims is three years, the Court also concludes that the relevant date for determining compliance with the statute of limitations is not January 4, 2010, the date Plaintiff's complaint was received by the Court, but rather December 28, 2009, the date Plaintiff signed his complaint.  Under the mailbox rule, Plaintiff's complaint "is deemed filed when it is handed over to prison officials for mailing to the court."  *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Moreover, "absent contrary evidence," a prisoner is deemed to have provided the complaint to prison officials for mailing "on the date he or she signed the complaint."  *Id.*  Defendants have submitted no evidence to overcome the presumption that Plaintiff submitted his complaint for mailing on December 28, 2009.  At first glance, therefore, it appears that any claims alleged in Plaintiff's complaint that accrued prior to December 28, 2006, must be dismissed for failure to comply with the statute of limitations.

The question of when a claim accrues and when the statute of limitations begins to run, however, must take into consideration the PLRA's mandatory exhaustion requirement.  It is well established that with respect to claims subject to the PLRA's exhaustion requirement, the statute of limitations is tolled for the period during which a prisoner is properly exhausting his claims through the prison grievance process. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Threatt v. Olger*, 2010 WL 1848515 at *5 (W.D. Mich., May 7, 2010); *Skinner v. Reynolds*, 2008 WL 5156618 at *2 (W.D. Mich., Dec. 8, 2008).  However, the statute of limitations is tolled only until the prisoner receives a Step III response to his grievance or until the date by which the grievance process is required to be

completed under MDOC policy.  *See Threatt*, 2010 WL 1848515 at *5; *Skinner*, 2008 WL 5156618 at *2.

Under MDOC policy in effect from November 1, 2000, through March 5, 2007, the grievance process was required to be completed within 90 days.  Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ V (eff. Nov. 1, 2000); Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ T (eff. April 28, 2003); Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ U (eff. Dec. 19, 2003); Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ S (eff. Mar. 5, 2007).[2]  Thus, while the statute of limitations in this matter is three years, it is possible for Plaintiff's claims to be timely even if they accrued more than three years before he gave his original complaint to prison officials for mailing.  Defendants selection, therefore, of January 4, 2007, as the last date by which Plaintiff could have filed a grievance regarding a claim not barred by the statute of limitations is incorrect.  A matter addressed in a grievance filed as early as September 29, 2006, could be timely asserted in this matter.

In sum, while Defendants have established that the seven grievances discussed above served to exhaust only one of the claims asserted in Plaintiff's First Amended Complaint, Defendants have failed to establish that these seven grievances represent the entire universe of grievances filed by Plaintiff during the relevant time period.  Stated differently, demonstrating that a particular grievance fails to properly exhaust a claim is quite distinct from establishing that the claim in question has not been properly exhausted.  Thus, Defendants have failed to carry their burden to establish that Plaintiff has failed to exhaust the claims in his complaint.  Accordingly, the undersigned recommends that Defendants' motions to dismiss for failure to exhaust administrative remedies be denied.

---

[2]  Under current MDOC policy, in effect since March 5, 2007, the grievance process is required to be completed within 120 days.  Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ S (eff. Mar. 5, 2007); Mich. Dep't of Corr., Policy Directive 03.02.130 ¶ S (eff. July 9, 2007).

**II.**          **Statute of Limitations**

All three Defendants assert that they are entitled to relief on statute of limitations grounds.  As discussed below, the Court only partly agrees.

A.          Defendant CMS

In his First Amended Complaint, Plaintiff alleges that "since approximately 2003" CMS "adopted, authorized, and implemented a nationwide unwritten corporate policy of acting with deliberate indifference to health care conditions. . .[of] chronic care prisoners. . .and disregarded that serious risk for purely monetary incentives."  Plaintiff further asserts that "since August 2006, Defendant, CMS, exercised the full and complete authority of and acted on behalf of and pursuant to its nationwide policy of deliberate indifference to the serious medical needs of chronic care prisoners based upon craven profit motives."  Plaintiff alleges that CMS' actions violated his Eighth Amendment rights.

Given the allegations in Plaintiff's complaint, Plaintiff's claims against CMS accrued no later than August 2006.  As previously noted, Plaintiff filed a grievance on August 26, 2006, regarding this matter which served to toll the statute of limitations.  The statute was only tolled, however, for 90 days from the date he filed his Step I grievance.  Thus, the statute of limitations began running on November 26, 2006.  Plaintiff's complaint was not given to prison officials for mailing until December 28, 2006.  Thus, Plaintiff's claims against Defendant CMS must be dismissed as untimely filed.  Plaintiff disputes this, asserting that the statute of limitations was tolled July 26, 2007, the date on which he received a response to his Step III grievance appeal.  The Court is not persuaded.  As the *Threatt* and *Skinner* decisions, referenced above, make clear, while the statute of limitations is tolled while a grievance is pursued, the statute is tolled only until the prisoner receives a Step III response to his

grievance or until the date by which the grievance process is required to be completed under MDOC policy.  The undersigned, therefore, recommends that Plaintiff's claims against Defendant CMS be dismissed for failure to comply with the statute of limitations.

            B.      Defendants MDOC and State of Michigan

            As detailed above, Plaintiff asserts that Defendants violated his rights under the ADA by excluding him from participation in or denying him the benefit of several programs, services, and activities.  Plaintiff has failed, however, to identify in his First Amended Complaint the dates on which any of the actions giving rise to his various claims occurred.  As discussed above, however, it is clear from the grievance that Plaintiff filed on August 26, 2006, that his claims concerning the alleged denial of a diabetic snacks and diet tray accrued no later than August 26, 2006.  As discussed in the preceding section, however, the statute of limitations was only tolled until November 26, 2006.  Because his complaint was not given to prison officials for mailing until December 28, 2006, his claims concerning the alleged denial of his diabetic snacks and diet tray are untimely.

            Accordingly, the undersigned recommends that Defendants' motion for summary judgment on statute of limitations grounds be granted as to Plaintiff's claims concerning the alleged denial of his diabetic snacks and diet tray, but otherwise denied.

III.            **Failure to State a Claim**

All three Defendants also argue that they are entitled to relief on the ground that Plaintiff's allegations fail to state a claim on which relief may be granted.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court more recently held, to satisfy this Rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When evaluating a complaint under Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, and items appearing in the record of the case. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also, Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

A.      Defendant CMS

Plaintiff asserts that CMS violated his Eighth Amendment rights by implementing and acting pursuant to a policy of deliberate indifference.  As is well recognized, CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001).  To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation.  *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

While Plaintiff's complaint repeatedly asserts the legal conclusion that CMS acted with deliberate indifference, Plaintiff has failed to allege facts sufficient to raise his claim for relief "above the speculative level."  The essence of Plaintiff's claim is that CMS is a for-profit corporation and that in pursuit of profits acted with deliberate indifference.  First, there is nothing inherently illegal or unconstitutional about a corporation attempting to earn a profit.  More importantly, Plaintiff has failed to allege any *facts* which, if proven, would enable him to demonstrate that CMS knowingly engaged in a "clear and persistent pattern" of illegal activity and that such caused Plaintiff to suffer a deprivation of his constitutional rights.  Again, endlessly repeating the legal conclusion that CMS acted with deliberate indifference cannot substitute for factual allegations sufficient to demonstrate such. Accordingly, the undersigned recommends, in the alternative, that Plaintiff's claims against Defendant CMS be dismissed for failure to state a claim on which relief may be granted.

B.      Defendants MDOC and State of Michigan

Before examining whether Plaintiff's allegations against these Defendants state a claim on which relief may be granted, the Court must address Defendants' argument that Plaintiff's ADA

claims (articulated above) should be treated as claims alleging violation of the Eighth Amendment. As courts recognize, "the party who brings a suit is master to decide what law he will rely upon." *O'Guinn*, 502 F.3d at 1060. Plaintiff has clearly alleged that Defendants violated his rights under the ADA not the Eighth Amendment. The Court, therefore, declines Defendants' request to rewrite Plaintiff's complaint.

Plaintiff asserts that Defendants violated his rights under the Title II of the ADA which provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132). As is well recognized, the ADA applies to state prisoners. *See McKinley v. Bowlen*, 2001 WL 493394 at *1 (6th Cir., May 1, 2001) (*citing Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)).

To make out a prima facie case of discrimination under Title II of the ADA, Plaintiff must establish the following: (1) he has a disability, (2) he is otherwise qualified, (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination solely because of his disability, and (4) the discrimination in question was intentionally directed toward him. *See Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices. . .meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." *Jones*, 341 F.3d at 477 (quoting 42 U.S.C. § 12131).

While Plaintiff alleges that he is disabled, he has failed to allege that he was subjected to discrimination *solely* because of his disability.  This omission is fatal to Plaintiff's claims.  *See, e.g., Everson v. Leis*, 412 Fed. Appx. 771, 774 n.1 (6th Cir., Feb. 10, 2011) (recognizing that "'solely' is part of this circuit's test" under Title II of the ADA).  Plaintiff has also failed to allege that the discrimination of which he complains was intentional.  Accordingly, the undersigned recommends that Plaintiff's claims against Defendants MDOC and State of Michigan be dismissed for failure to state a claim on which relief may be granted.

**IV.        State Law Claims**

In Count IV of his First Amended Complaint, Plaintiff asserts a state law claim for deliberate infliction of mental and emotional distress.  While the Court *could* retain jurisdiction over Plaintiff's state law claims, the undersigned recommends that these claims be dismissed without prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction."  Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well."  *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Wojnicz v. Davis*, 2003 WL 21774162 at *3 (6th Cir., July 29, 2003) (same).  Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such without prejudice so that Plaintiff may pursue them in the appropriate state forum.

**V.**          **Plaintiff's Rule 56(d) Motion**

In response to Defendant CMS's motion to dismiss, Plaintiff asserts that "it would be inappropriate to grant any defendants in this case, relief without allowing plaintiff discovery he has been seeking." (Dkt. #123 at 3 of 4). The Court interprets this as a request, pursuant to Rule 56(d), to stay resolution of Defendants' motions for summary judgment on the ground that he requires certain discovery to properly respond thereto. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer considering the motion, allow time for discovery, or "issue any other appropriate order." Plaintiff has failed, however, to comply with the requirement that his request be accompanied by affidavit or declaration. Plaintiff has likewise failed to identify or describe the discovery he seeks or how such would enable him to respond to the present motions. Accordingly, the Court recommends that Plaintiff's motion for stay be denied.

<u>**CONCLUSION**</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants Michigan Department of Corrections and State of Michigan's Motion for Summary Judgment</u>, (dkt. #107), be **granted**; <u>Defendant Correctional Medical Services, Inc.'s Motion to Dismiss</u>, (dkt. #115), be **granted**; and this matter terminated. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  December 29, 2011                          /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge